SAUNDERS *v.* STRINGER.

1. TRADE-MARKS AND TRADE-NAMES—TERMINATION OF PARTNERSHIP. Partners, upon termination of partnership agreement, have right in common to use of an undisposed of trade-name, but neither to the exclusion of the other.

2. SAME—ABANDONMENT—EVIDENCE—INTENT.

    Temporary disuse of trade-name or use of an additional trade-name along with it is not sufficient evidence of abandonment where forfeiture is claimed on that ground but there must be showing of practical abandonment and actual intent to do so.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted October 13, 1933. (Docket No. 64, Calendar No. 37,400.)    Decided December 5, 1933. Rehearing denied January 30, 1934.

Bill by Nellie Peck Saunders to restrain Kathleen Snow Stringer from the use of a trade-name. Cross-bill of defendant against plaintiff and Detroit Town Hall, Inc., a Michigan corporation, from using the same trade-name. From decree dismissing the bill as to defendant, cross-bill as to plaintiff and enjoining corporate cross-defendant, defendant appeals. Affirmed.

*William E. Tarsney,* for plaintiff.

*Wm. Henry Gallagher* (*Francis Fitzgerald,* of counsel), for defendant.

SHARPE, J.    Prior to the year 1929, the plaintiff had been engaged in lecturing and furnishing entertainments by concert companies in which she took part. In that year she visited the city of New York, and her attention was then called to entertainments given under the name of the "Town Hall," founded by the League for Political Education. On her return to Detroit she consulted with some of her friends and finally concluded to have a "Detroit Town Hall" in that city. The plan was to secure a number of "founders-members" who would each pay a specified amount and receive tickets entitling them to admission to the entertainments to be given.

In July of that year she sought the assistance of the defendant, who had been the society editress of the Detroit Free Press for a number of years and at that time published and edited the 20th Century Club magazine. On August 1st they entered into a contract to undertake the management of a "Town Hall series of attractions" for three years, the profit to be divided equally between them. A certificate of doing business under the assumed name of "Detroit Town Hall" was filed by them with the county clerk. Pursuant thereto they arranged for a series of lectures in the Cass Theatre during the seasons of 1929–1930, 1930–1931 and 1931–1932, beginning about October 1st and ending about May 1st of the following year.

Some dissatisfaction arose as early as January, 1931, and on the 31st day of that month the plaintiff and two other ladies organized a corporation under the name of "The Detroit Town Hall." The defendant had no knowledge thereof at that time. After some correspondence with the officials of the "Town Hall" in New York, plaintiff concluded to no longer use that name, and in her preparatory work for the season of 1932–1933 she sent a notice to their former patrons, stating that the partnership would soon expire and that she would continue the lecture course under the name of "Detroit Friday Morning Series" instead of "Detroit Town Hall Series;" that the same theatre would be used therefor, and that the defendant would not be connected therewith. On February 12, 1932, she published a circular, headed "Detroit Friday Morning Series of World Personalities formerly Detroit Town Hall," and in which she announced the names of a number of the lecturers.

On defendant's attention being called to these acts of the plaintiff she mailed a letter "To the Contributing Members of the Detroit Town Hall Series," stating that she had been "urged to provide a lecture course beginning in October of the same high quality that has marked the Town Hall events," and that she was formulating plans therefor. She soon after leased the Wilson theatre and announced a lecture course to be conducted therein under the old name, "Detroit Town Hall Series."

On March 1, 1932, the plaintiff filed the bill of complaint herein, setting up to some extent the facts above stated, alleging that defendant had "no right to appropriate to herself the trade-name, 'Town Hall,' " and that such name was of great value to plaintiff, and prayed therein that the court decree that the name "Town Hall" was her property and that she was entitled to the exclusive right thereto, and that defendant be enjoined from using the same.

The defendant filed an answer denying that plaintiff was entitled to the relief sought, and by cross-bill prayed that the corporation "Detroit Town Hall, Inc." be made a party defendant, and that it and the plaintiff be enjoined from using the trade-name "Detroit Town Hall," and that they be required to account to her for their unlawful and unauthorized use of the name. The plaintiff and the corporation filed answers thereto, denying that defendant was entitled to the relief sought by her.

The trial court held that, at the termination of the partnership agreement, the trade-name, not having been disposed of, belonged to the partners in common and that each of them had the right to use it, but neither of them to the exclusion of the other, and entered a decree dismissing both the bill and

cross-bill. He also held that it might not be used by the corporation, and enjoined its use by it.

The defendant has appealed. Her counsel do not question the holding of the court as above stated, but insist that plaintiff abandoned her right to use the trade-name and should be restrained from further using it as prayed for in the cross-bill. This claim is based upon the letters and circulars sent out by the plaintiff, above referred to. But that there was no such intent on her part is clearly evidenced by a letter written by plaintiff's attorney to defendant's attorney on February 25, 1932, a number of months before the partnership agreement had terminated, in which, after referring to the fact that the plaintiff intended during the coming season to use a name other than "Town Hall," he said:

"This will give Mrs. Stringer the same opportunity as Mrs. Saunders will have to promote an independent series for the coming season. But by this act of Mrs. Saunders, Mrs. Stringer must not get the idea that Mrs. Saunders has abandoned the name 'Town Hall,' because she has not. Mrs. Saunders will not tolerate the use of the name by Mrs. Stringer. She is willing, as stated, for the coming season, to use some other name herself."

The applicable rule is thus stated in 26 R. C. L. pp. 909, 910:

"Abandonment must, however, be strictly proven where a forfeiture is claimed on that ground. The temporary disuse of a trade-name, or even the temporary use of an additional trade-name in connection with it, is not sufficient. It is necessary to show, not only acts indicating a practical abandonment, but an actual intent to abandon, since acts which, unexplained, would be sufficient to establish an abandonment may be answered by showing that

there never was an intention to give up and relinquish the right claimed."

The text is fully supported by the cases cited in the footnote thereto.

The decree is affirmed, with costs to appellee.

McDonald, C. J., and Weadock, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.